ANDERSON CLARKSON BROWN PLLC
2158 N Gilbert Rd., Suite 114
Mesa, Arizona 85203
Telephone: 480-247-0557
E-mail: sbrown@acblawgroup.com

Scott K. Brown (CO Bar No. 49518)
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CADI US, LLC, a Delaware limited liability company,<br><br>Plaintiffs<br><br>v.<br><br>Statebridge Company, LLC, a Colorado limited liability company, FrontRange Acquisition, LLC, a Colorado limited liability company, Crestone Holdings, LLC, a Colorado limited liability company, Kevin Kanouff, David McDonnell, Glenn Robson, David Robertson, Scott Berry, and John Does I-X;<br><br>Defendants. | Case No. 1:25-cv-00345<br><br>**COMPLAINT** |

CADI US, LLC ("CADI") brings its complaint against defendants Statebridge Company, LLC ("Statebridge"), FrontRange Acquisition, LLC ("FrontRange"), Crestone Holdings, LLC ("Crestone"), Kevin Kanouff, David McDonnell, Glenn Robson, David Robertson, and Scott Berry as follows:

PARTIES

1. CADI is a Delaware limited liability company whose principal place of business is in the State of Arizona.

2. Statebridge is a Colorado limited liability company whose principal place of business in the State of Colorado and committed acts which are the subject of this complaint.

3. FrontRange is a Colorado limited liability company whose principal place of

1

business is in the State of Colorado and committed acts which are the subject of this complaint.

4.      Crestone is a Colorado limited liability company whose principal place of business is in the State of Colorado and committed acts which are the subject of this complaint.

5.      Upon information and belief, Kevin Kanouff is a resident of Colorado and committed acts which are the subject of this complaint.

6.      Upon information and belief, David McDonnell is a resident of Colorado and committed acts which are the subject of this complaint.

7.      Upon information and belief, Glenn Robson is a resident of Colorado and committed acts which are the subject of this complaint.

8.      Upon information and belief, David Robertson is a resident of Colorado and committed acts which are the subject of this complaint.

9.      Upon information and belief, Scott Berry is a resident of Colorado and committed acts which are the subject of this complaint.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between CADI and all of the defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

11.     Venue is proper in the District of Colorado pursuant to the parties' agreement.

12.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to CADI's claims occurred in this district or pursuant to 28 U.S.C. § 1391(b)(3) as there is no district in which an action may otherwise be brought and every defendant is subject to the personal jurisdiction of this Court.

## GENERAL ALLEGATIONS

13.     CADI is the assignee, successor in interest, and real party in interest with respect to the rights, title, interest, and obligations of Window Rock Investment Operations, LLC and

Window Rock Mortgage LLC as they relate to the matters alleged herein.

14. On or about April 15, 2016, CADI entered into the Fifth Amended and Restated Operating Agreement of Statebridge Company, LLC (the "Operating Agreement").

15. Pursuant to the Operating Agreement, Statebridge's members included, without limitation, CADI, Crestone, and FrontRange.

16. Under the Operating Agreement, FrontRange had the authority to name four of the six directors of Statebridge's Board of Directors (the "Board").

17. Under the Operating Agreement, FrontRange had the authority to name the chairman of the Board.

18. Under the Operating Agreement, Crestone had the authority to name two of the six directors of the Board.

19. Upon information and belief, Glenn Robson was, at all material times, a director of Statebridge.

20. Upon information and belief, David Robertson was, at all material times, a director of Statebridge.

21. Upon information and belief, Scott Berry was, at all material times, a director of Statebridge.

22. Upon information and belief, Kevin Kanouff was, at all material times, a director of Statebridge.

23. Upon information and belief, Kevin Kanouff was the chief executive officer of Statebridge.

24. Upon information and belief, David McDonnell was, at all material times, a director of Statebridge.

25. Upon information and belief, David McDonnell was an officer of Statebridge.

26. Each of Statebridge's officers and directors had a contractual duty to act in good faith with respect to Statebridge and its members, including CADI.

27. The Board had a contractual duty not to take, or cause Statebridge to take, any action

which would materially and adversely affect CADI.

28. Each of Statebridge's officers and directors had a contractual duty not to commit fraud, intentional misconduct, or a knowing violation of the law.

29. At all times material hereto, FrontRange, Crestone, Statebridge's officers, and Statebridge's directors controlled, directed, and had actual knowledge of Statebridge's activities.

30. At all times material hereto, FrontRange, Crestone, Statebridge's officers, and Statebridge's directors should have controlled, directed, and known about Statebridge's activities.

31. Pursuant to the Operating Agreement, CADI owned 90% of the Statebridge Class C MSR Units (the "Class C Units").

32. The Class C Units related to the mortgage servicing rights (the "MSRs") that Statebridge had acquired with respect to various mortgages (the "Mortgages").

33. On or about May 2, 2016, CADI entered into a Services Agreement with Statebridge (the "Services Agreement").

34. Pursuant to the Services Agreement, Statebridge serviced the Mortgages including, without limitation, monitoring, managing, and accounting for cash receipts and disbursements related to the Mortgages (the "MSR Cash Flow").

35. From time to time, CADI advanced funds to Statebridge to fund deficiencies in the MSR Cash Flow, as reported by Statebridge.

36. From time to time, Statebridge received payments that, if allocated properly, should have reimbursed CADI for purported MSR Cash Flow deficiencies that CADI had previously funded.

37. Pursuant to the Services Agreement, Statebridge was obligated to maintain accurate and complete records with respect to the services provided in connection therewith.

38. Pursuant to the Services Agreement, Statebridge agreed to indemnify CADI for any losses resulting from, or arising out of, Statebridge's breaches of the Service Agreement.

39. Pursuant to the Operating Agreement, Statebridge was obligated to maintain separate bank accounts for that portion of its business related to the MSR Cash Flow and to segregate the monies related to the MSR Cash Flow from the monies and bank accounts related to the rest of Statebridge's business operations.

40. Pursuant to the Operating Agreement, Statebridge was obligated to distribute tax accurate returns to CADI for review on or before March 15 of each year in which such returns were due.

41. Pursuant to the Operating Agreement, Statebridge was obligated to file accurate tax returns.

42. Pursuant to the Operating Agreement, Statebridge was obligated to accurately maintain capital accounts on behalf of Statebridge's members, including CADI.

43. Pursuant to the Operating Agreement, Statebridge was obligated to distribute the proceeds from the sale of the MSRs to its members, including CADI, in direction proportion to such member's ownership of the Class C Units.

44. On or about May 28, 2020, CADI, Statebridge, Crestone, and FrontRange entered into a Settlement Agreement (the "Settlement Agreement").

45. In the Settlement Agreement, Statebridge made certain representations and warranties regarding reimbursements, and other amounts owed to CADI that related to MSR Cash Flow.

46. In the Settlement Agreement, Statebridge represented and warranted that the outstanding advances owed to CADI as of April 30, 2020 totaled $3,004,422.

47. Concurrent with the Settlement Agreement, Statebridge reported to CADI that the outstanding advances relating to the portfolio of MSR investments were comprised of principal and interest advances of $1,340,638, corporate advances of $1,143,366, and escrow advances of $520,437.

48. The warranties and representations made by Statebridge with regard to the amounts owed to CADI were false.

49. Defendants knew those statements were false at the time they made them.

50. Defendants should have known those statements were false at the time they made them.

51. Upon information and belief, Statebridge actually owed CADI more than the amounts set forth in the Settlement Agreement.

52. Defendants were the only parties that had the information necessary to determine whether those warranties and representations were accurate.

53. It was reasonable for CADI to rely on Statebridge's warranties and representations because Statebridge had purportedly been keeping accurate records of the thousands of transactions in question, because Statebridge's activities were overseen by both Crestone, FrontRange, and Statebridge's officers and directors, and because Statebridge had a contractual and fiduciary obligation to make accurate representations to CADI.

54. On or about July 31, 2020, Statebridge transferred its mortgage servicing rights to an entity named BSI.

55. On or about December 16, 2021, CADI, together with Statebridge, entered into Agreement Concerning Escrow Account Between Statebridge Company, LLC and CADI US, LLC AND Window Rock Investments Operations, LLC (the "Escrow Agreement").

56. Pursuant to the Escrow Agreement, an escrow account (the "Escrow Account") was created which would hold the proceeds collected in connection with a Voluntary Partial Cancellation of Servicing Contract Rights Agreement to which Statebridge was a party.

57. From time to time, funds were deposited into, and remain in, the Escrow Account to which CADI is entitled.

58. CADI is entitled to, and has demanded, payment of funds from the Escrow Agreement.

59. Statebridge has breached the Escrow Agreement by disputing CADI's right to payment of the funds in the Escrow Account.

60. In 2023, BSI calculated that the MSR Cash Flow consisting of principal and interest

advances to which CADI was entitled on July 31, 2020 were only $403,005.63, not the original $1,340,638 reported by Statebridge.

61. Upon learning of the $937,632 discrepancy in the amounts, CADI contacted Norman Holmes, Statebridge's controller, and Mr. Kanouff to seek an explanation.

62. Mr. Holmes and Mr. Kanouff assured CADI that the original calculation was accurate and that Statebridge was in the process of preparing a comprehensive reconciliation report that would be provided to CADI's principals when complete.

63. In April 2024, Rene Wigen, Statebridge's vice president of loan administration, informed CADI that the reconciliation was progressing and that it would be completed promptly.

64. As late as July 2024, Kevin Kanouff informed CADI that the reconciliation was nearly complete and that it would be provided to CADI promptly.

65. Statebridge never provided CADI with the promised reconciliation.

66. CADI is entitled to an accounting of the transactions which Statebridge oversaw and the status of any amounts owed to CADI in connection with the Operating Agreement, the Services Agreement, and the Escrow Agreement.

67. This accounting will show that Statebridge possesses or controls funds, both in its own accounts and in the Escrow Account, that rightfully belong to CADI.

## COUNT I
### Alter Ego

68. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

69. At all relevant times, Statebridge operated as the alter ego or alias of Crestone, FrontRange, Mr. Kanouff, Mr. McDonnell, Mr. Robson, Mr. Robertson, and Mr. Berry.

70. Statebridge's corporate form was used to perpetuate the acts of fraud and deceit alleged herein.

71. Disregarding the separate corporate form of Statebridge, such that the various

defendants each may be held liable for the acts and omissions alleged herein, will yield an equitable result in that CADI can recover on its losses and damages caused by defendants.

72. All allegations against Statebridge in this Complaint shall be construed as if they were made against each defendant, unless noted to the contrary.

## COUNT II

### Breach of Contract – Operating Agreement

73. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

74. The Operating Agreement is a valid and enforceable contract between CADI and Statebridge.

75. CADI has performed its obligations under the Operating Agreement or was justified in any identifiable nonperformance.

76. Defendants have breached the Operating Agreement by, among other things, failing to maintain separate bank accounts for that portion of its business related to the MSR Cash Flow.

77. Defendants have breached the Operating Agreement by, among other things, failing to segregate the monies related to the MSR Cash Flow from the monies and bank accounts related to the rest of Statebridge's business.

78. Defendants have breached the Operating Agreement by, among other things, failing to distribute accurate tax returns to CADI and by filing inaccurate tax returns.

79. Defendants have breached the Operating Agreement by, among other things, failing to accurately maintain capital accounts on behalf of Statebridge's members, including CADI.

80. Defendants have breached the Operating Agreement by, among other things, failing to distribute the proceeds from the sale of the MSRs to CADI in direction proportion CADI's ownership of the Class C Units.

81. As a result of defendants' breach, CADI has suffered damages in an amount to be

1  established and proven at trial but not less than $1,140,542.

## COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing – Operating Agreement

82. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

83. The Operating Agreement contains an implied covenant of good faith and fair dealing.

84. Defendants maintained discretionary authority under the Operating Agreement in the performance of Defendants' duties under the Operating Agreement.

85. Defendants breached the implied covenant of good faith and fair dealing by failing to perform the duties under the Operating Agreement in a manner such that it provided CADI with the benefit of its bargain.

86. As a result of defendants' breach, CADI has suffered damages in an amount to be established and proven at trial.

## COUNT IV

### Breach of Contract – Services Agreement

87. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

88. The Services Agreement is a valid and enforceable contract between CADI and the defendants.

89. CADI has performed its obligations under the Services Agreement or was justified in any identifiable nonperformance.

90. Defendants breached the Services Agreement by failing to maintain accurate and complete records with respect to the services provided in connection therewith.

91. Defendants breached the Services Agreement by failing to indemnify CADI for the losses resulting from, or arising out of, Statebridge's breaches of the Service Agreement.

92. As a result of defendants' breach, CADI has suffered damages in an amount to be

established and proven at trial but not less than $1,140,542.

## COUNT V

### Breach of Implied Covenant of Good Faith and Fair Dealing – Services Agreement

93. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

94. The Services Agreement contains an implied covenant of good faith and fair dealing.

95. Defendants maintained discretionary authority under the Services Agreement in the performance of Defendants' duties under the Services Agreement.

96. Defendants breached the implied covenant of good faith and fair dealing by failing to perform the duties under the Services Agreement in a manner that provided CADI with the benefit of its bargain.

97. As a result of defendants' breach, CADI has suffered damages in an amount to be established and proven at trial.

## COUNT VI

### Breach of Contract – Escrow Agreement

98. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

99. The Escrow Agreement is a valid and enforceable contract between CADI and the defendants.

100. CADI has performed its obligations under the Escrow Agreement or was justified in any identifiable nonperformance.

101. Defendants have failed to perform their obligations under the Escrow Agreement in that they have refused to allow funds in the Escrow Account to be distributed to CADI in accordance with the terms of the Settlement Agreement.

102. As a result of defendants' breach, CADI has suffered damages in an amount to be established and proven at trial but not less than $238,544.71.

## COUNT VII

Breach of Implied Covenant of Good Faith and Fair Dealing – Escrow Agreement

103. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

104. The Escrow Agreement contains an implied covenant of good faith and fair dealing.

105. Defendants maintained discretionary authority under the Escrow Agreement in the performance of Defendants' duties under the Escrow Agreement.

106. Defendants breached the implied covenant of good faith and fair dealing by failing to perform the duties under the Escrow Agreement in a manner such that it provided CADI with the benefit of its bargain set forth in the Escrow Agreement and the Settlement Agreement.

107. As a result of defendants' breach, CADI has suffered damages in an amount to be established and proven at trial.

## COUNT VIII

Breach of Contract – Officers and Directors

108. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

109. Glenn Robson, David Robertson, Scott Berry, Kevin Kanouff, and David McDonnell were each, at all material times, a director or officer of Statebridge.

110. Each of Statebridge's officers and directors had a contractual duty under the Operating Agreement to act in good faith with respect to Statebridge and its members, including CADI.

111. The Board had a contractual duty under the Operating Agreement not to take, or cause Statebridge to take, any action which would materially and adversely affect CADI.

112. Each of Statebridge's officers and directors had a contractual duty under the Operating Agreement not to commit fraud, intentional misconduct, or a knowing violation of the law.

113. Mr. Robson, Mr. Robertson, Mr. Berry, Mr. Kanouff, and Mr. McDonnell breached

their duties under the Operating Agreement.

114. As a result of Mr. Robson, Mr. Robertson, Mr. Berry, Mr. Kanouff, and Mr. McDonnell's breaches, CADI has suffered damages in an amount to be established and proven at trial.

## COUNT IX

### Negligence

115. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

116. Defendants had a duty to exercise their various obligations under the Operating Agreement, the Services Agreement, the Settlement Agreement, and the Escrow Agreement in a reasonable manner.

117. Defendants breached that duty by performing their obligations in a manner that fell below the applicable standard of care.

118. As a result of defendants' negligence, CADI has suffered damages in an amount to be established and proven at trial but not less than $1,140,542.

## COUNT X

### Negligent Misrepresentation

119. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

120. Defendants negligently provided false information in the representations and warranties given to CADI in the Settlement Agreement.

121. Defendants should have known their representations were false when they made them.

122. Defendants intended for CADI to rely on those false representations.

123. CADI relied on the false representations, warranties and accounting data provided by defendants.

124. CADI reasonably relied on the representations and warranties provided by

defendants.

125. Defendants' negligent misrepresentations resulted in damages to CADI in an amount to be established and proven at trial.

COUNT XI

Fraud

126. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

127. Defendants fraudulently misrepresented material facts in the representations and warranties given to CADI in the Settlement Agreement and in the false accounting data provided.

128. Defendants knew their representations were false when they made them.

129. Defendants intended for CADI to rely on those false representations.

130. CADI relied on the false representations, warranties and accounting data provided by defendants.

131. CADI had a right to rely on the representations and warranties provided by defendants or was justified in its reliance because Statebridge had purportedly been keeping accurate records of the thousands of transactions in question, because Statebridge's activities were overseen by both Crestone and FrontRange, and because Statebridge had a contractual and fiduciary obligation to make accurate representations to CADI.

132. Defendants' fraud resulted in damages to CADI in an amount to be established and proven at trial.

COUNT XII

Fraud in the Inducement / Fraudulent Misrepresentation

133. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

134. Defendants fraudulently misrepresented material facts in the representations and warranties given to CADI related to the Settlement Agreement and the Escrow Agreement.

135. CADI relied on the representations and warranties provided by defendants.

136. CADI had a right to rely on the representations and warranties provided by defendants or was justified in its reliance because Statebridge had purportedly been keeping accurate records of the thousands of transactions in question, because Statebridge's activities were overseen by both Crestone and FrontRange, and because Statebridge had a contractual and fiduciary obligation to make accurate representations to CADI.

137. Had CADI known of the fraudulent nature of Statebridge's representations, CADI would never have entered into the Settlement Agreement.

138. Had CADI known of the fraudulent nature of Statebridge's representations, CADI would never have entered into the Escrow Agreement.

139. If it is proven that Statebridge fraudulently induced CADI into entering into the Settlement Agreement and the Escrow Agreement, such agreements shall be void as if CADI and Statebridge had never entered into them.

140. CADI's reliance on defendants' misrepresentations resulted in damages in an amount to be established and proven at trial.

## COUNT XIII

### Conversion

141. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

142. Defendants have exercised dominion or control over funds related to the MSR Cash Flow that should have been paid to CADI.

143. These funds rightfully belong to CADI.

144. Defendants had no legal justification to withhold, divert, or otherwise exercise dominion and control over the funds owed to CADI.

145. CADI has made a demand on defendants for return and payment of the funds it is entitled to, and for an accounting which has never been provided.

146. Defendants have failed to return or pay over the funds to which CADI is entitled.

147. Defendant's conversion of the funds in question has resulted in damages to CADI in an amount to be established and proven at trial.

## COUNT XIV

### Aiding and Abetting Tortious Conduct

148. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

149. Defendants have aided or assisted Statebridge in its misrepresentations regarding the representations, warranties, and inaccurate accounting referenced herein.

150. Defendants have aided or assisted Statebridge in its conversion of the amounts due and owing to CADI.

151. Defendants, in aiding or assisting Statebridge in its misrepresentations, were generally aware of their role in an overall tortious activity at the time such assistance was rendered.

152. Defendants, in aiding or assisting Statebridge in its conversion of the amounts due and owing to CADI, were generally aware of their role in an overall tortious activity at the time such assistance was rendered.

153. Defendants knowingly and substantially assisted Statebridge in its misrepresentations and accountings which provided false and misleading information to CADI.

## COUNT XV

### Breach of Fiduciary Duty

154. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

155. Defendants owed a fiduciary duty to CADI regarding the handling of the MSR Cash Flow and all other amounts that are payable to CADI and the accuracy of the representations and warranties of such amounts.

156. Defendants breached the fiduciary duty owed to CADI in mishandling the MSR

Cash Flow, and other funds, providing inaccurate accounting, or not providing the accounting requested by CADI.

157. Defendants' breach of that duty has caused injury to CADI in that CADI has been deprived of funds to which it was entitled.

158. Defendants' breaches of fiduciary duty has resulted in damages to CADI in an amount to be established and proven at trial.

## COUNT XVI

### Accounting

159. CADI hereby incorporates by reference each preceding paragraph set forth in this complaint as if fully rewritten herein.

160. Defendants owed a fiduciary duty to CADI regarding the accuracy of the representations and warranties, together with the accounting on the several accounts defendants were servicing.

161. CADI has demanded an accounting of the thousands of transactions at issue in this matter.

162. Defendants promised, but failed to provide, an accounting that would substantiate the amounts owing to CADI in connection with the Operating Agreement, the Services Agreement, the Settlement Agreement, and the Escrow Agreement.

163. CADI is contractually entitled to such an accounting.

164. CADI is equitably entitled to such an accounting.

165. This Court should order defendants to provide an accounting

## PRAYER FOR RELIEF

WHEREFORE, CADI demands judgment against defendants as follows:

    a.    Requiring an accounting of amounts owed by defendants to CADI;

    b.    Compensatory damages against all defendants in excess of $75,000.00 and no less than $1,140,542;

    c.    Incidental damages;

      d.    Attorneys' fees and costs pursuant to C.R.S.A. § 13-17-102 and the parties' various agreements;

      e.    Pre-judgment and post-judgment interest at the statutory rate; and

      f.    Any further relief that this Court deems just and equitable.

DATED January 31, 2025.           ANDERSON CLARKSON BROWN, PLLC

                                  By: /s/ Scott Brown
                                         Attorneys for Plaintiff